William F. Maderer (wmaderer@saiber.com)
Vincent C. Cirilli (vcirilli@saiber.com)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
(973) 622-3333
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. NORMAN ENDE, M.D.,<br><br>                              Plaintiff,<br><br>                    v.<br><br>RUTGERS UNIVERSITY, RUTGERS NEW JERSEY MEDICAL SCHOOL, ROBERT L. JOHNSON, M.D., FAAP and JOHN DOES 1-10,<br><br>                              Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL**<br><br>***Document Filed Electronically***<br><br>[On Removal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. MRS-L-327-20] |

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331 and 1441(a), Defendants, Rutgers University, Rutgers New Jersey Medical School, and Robert L. Johnson, M.D., FAAP (collectively "Defendants"), by and through their attorneys, Saiber LLC, file this Notice of Removal of the above-captioned action from the Superior Court of New Jersey, Chancery Division, Morris County, and respectfully state the following as the basis for removal to this Court:[1]

---

[1] All Defendants consent to removal.

01442454.DOCX

## I.     PROCEDURAL HISTORY AND PLAINTIFF'S ALLEGATIONS

1.     On or about February 7, 2020, Plaintiff Dr. Norman Ende, M.D. ("Plaintiff"), filed a Verified Complaint and Order to Show Cause (with supporting papers) (collectively "Plaintiff's Complaint and OTSC") in the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. MRS-L-327-20.  Copies of Plaintiff's Complaint and OTSC are attached hereto as **Exhibits 1 and 2** respectively, which, pursuant to 28 U.S.C. § 1446(a), constitute all "process, pleadings, and orders served upon" Defendants in this action.

2.     Plaintiff's Verified Complaint alleges claims arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq.

3.     Defendants received a copy of Plaintiff's Complaint and OTSC on February 7, 2020.[2]

## II.    BASIS FOR FEDERAL COURT JURISDICTION: FEDERAL QUESTION

4.     Plaintiff alleges that Defendants violated the federal ADA statute by requiring him to complete a fitness for duty examination and by forcing him out of his job due to age.  Exh. 1, Verified Complaint ¶ 28.

5.     Accordingly, removal of this action is appropriate pursuant to 28 U.S.C. §§ 1331 and 1441(a) on the basis of this Court's original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. §§ 1331.

---

[2] Defendants have not yet been formally served.

### III.   DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

6.      This Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b) because Defendants have not yet been formally served with Plaintiff's Complaint and OTSC and the thirty-day period in which to file this Notice of Removal has not yet begun to run.

7.      Pursuant to 28 U.S.C. § 1441(a), venue is proper in the United States District Court for the District of New Jersey because it is the "district and division embracing the place where such action is pending."

8.      In accordance with 28 U.S.C. § 1446(d), Defendants will file a Notice of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Chancery Division, Morris County, and will serve a copy of same on Plaintiff.

9.      No previous application has been made for the relief requested herein.

10.     If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to brief any disputed issues and to present oral argument in support of its position that this case is properly removable.

11.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendants' rights to assert any procedural or substantive defense.

12.     By removing this action, Defendants do not admit to any of the allegations in Plaintiff's Complaint and OTSC.

**WHEREFORE**, Defendants hereby seek to remove the state court action, Superior Court of New Jersey, Chancery Division, Morris County, Docket No. MRS-L-327-20, to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a).

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendants*


By:      *s/ William F. Maderer*
          WILLIAM F. MADERER

Dated: February 11, 2020

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

On behalf of Defendants, I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, other than the matter in the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. MRS-L-327-20 from which Defendants seek removal, or of any pending arbitration or administrative proceeding.

*s/ William F. Maderer*
WILLIAM F. MADERER

Dated: February 11, 2020

01442454.DOCX

## CERTIFICATION OF SERVICE

I hereby certify that, on this date, a true and correct copy of the foregoing Notice of

Removal was served upon the following via Federal Express delivery:

Donald S. Dinsmore, Esq.
**CASHA & CASHA, LLC**
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
*Attorneys for Plaintiff*
*Dr. Norman Ende, M.D.*


*s/ William F. Maderer*
WILLIAM F. MADERER


Dated: February 11, 2020

# Exhibit 1

Donald S. Dinsmore, Esquire
Attorney ID #000402007
Casha & Casha, LLC
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Attorneys for the Plaintiff Dr. Norman Ende, M.D.

| | | |
|---|---|---|
| **DR. NORMAN ENDE, M.D.,** | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | : | CHANCERY DIVISION: MORRIS COUNTY |
| | : | GENERAL EQUITY PART |
| v. | : | |
| | : | DOCKET NO. |
| **RUTGERS UNIVERSITY, RUTGERS** | : | |
| **NEW JERSEY MEDICAL SCHOOL,** | : | Civil Action |
| **ROBERT L. JOHNSON, M.D., FAAP** | : | |
| **and JOHN DOES 1-10,** | : | VERIFIED COMPLAINT |
| Defendants. | : | |

The Plaintiff Dr. Norman Ende, M.D. residing at 91 East Shore Road, Mountain Lakes, in the County of Morris State of New Jersey, by way of Verified Complaint, says:

1.     Dr Ende is a Professor at Rutgers University which has its parent headquarters in the City of New Brunswick, Middlesex County and its Medical School headquartered in Newark, New Jersey, Essex County.

2.  From 1943 until 1985 he served in the United States Navy Reserves and reached the Office of Captain.

3.  Dr. Ende received my medical degree from the College of Virginia, Richmond in 1947.

4.  From 1947 to 1952, he served as an intern for the Bronx Hospital and then as a resident in New Orleans, Louisiana as both a resident of surgery and a resident of pathology.

5.  From 1954 until 1970, Dr. Ende served as an Instructor, as an Assistant Professor in pathology, and Professor in pathology for Baylor Medical School, Vanderbilt University and Emory University respectively.

6. From 1971 to present, he serves as a Professor of pathology for UMDNJ (which later became absorbed by the New Jersey Medical School of Rutgers University).

7. From 1974 to 1975, Dr. Ende was the Chairman of pathology for UMDNJ.

8. From 1977 to 1996, he was the Director of the tissue typing laboratory for UMDNJ.

9. Dr. Ende has authored multiple scholarly articles regarding fetal cord blood and transfusions.

10. He has received several honors over the course of my career including: a determination by the Assistant Secretary of Policy Evaluation and research that my plan for Mass Casualties for a Nuclear Terrorist Attack is the only plan that can deal with mass casualties, this has been introduced to both the USA and China; In 2003 I was selected to the Honorary Society of Virginia Commonwealth University Phi Kappa Phi alumnus; In 2002 received the "STAR" award from the Medical College of Virginia (Virginia Commonwealth University) for pioneering work in on Human Umbilical Cord Blood, and presented a lecture on human Umbilical Cord Blood" at the annual lecture of Sigma Xi, Distinguished Lecturer Services on May 12, 1999.

11. Since 1969 Dr. Ende  has engaged in extensive research regarding the following subjects: the treatment of clinical patients with cord blood, addressing health concerns such as Alzheimer's disease, neurological trauma, Diabetes 1 & 2, Parkinson's disease and Atherosclerosis, the damage to newborns; research regarding the clamping of umbilical cords and the damages to newborns; and the treatment of mass casualties from a nuclear terrorist attack.  My research regarding the treatment of mass terrorist attacks has been acknowledged in letter by the United States Air Force.

12. On January 6, 2020, Dr. Ende collapsed while at the Medical School Building.

13. On January 14, 2020, he received a letter stating that he would not be permitted to return to work without a fitness of duty evaluation.

14. It is his belief that the January 14, 2020 is not reasonably based on his professional duties.

15. It is his belief that the incidents and interactions mentioned are arbitrary and capricious.

16. On January 17, 2020, Dr. Ende's doctor, Dr. Steven Guidis, M.D., a Nephrological Specialist, and his attending Physician stated in a letter sent to Dean Johnson that it was of his opinion that I had collapsed due to orthosatic hypotension due to dehydration, and with a modification of my medication, I should be able to return to work

17. On January 20, 2020, his Cardiologist Dr. Robert Wang, M.D., F.A.C.C., stated that I had collapsed due to orthosatic hypotension, and with a modification to my medications he should be able to return to work.

18.     The January 14, 2020 letter cited the collapse of January 6, 2020, which is a physical issue unrelated to the essential job functions of a Professor.

19.     Rutgers University policy 60.51 outlines the essential job functions of a Rutgers Professor and nowhere within are physical requirements described.

20.     The January 14, 2020 letter went on to mention previous interactions and incidents, which were given no detail in the letter; thereby making them arbitrary and capricious.

21.     On January 27, 2019 this counsel had a conversation Farrah Gold Henry, Senior Associate General Counsel from Rutgers University.  No resolution was met.

22.     On February 4, 2020 Dean Johnson sent Dr. Norman Ende and additional letter with new concerns and incidents listed.

23.     Rutgers University was unable to produce documents in Dr. Norman Ende's file to support such incidents.

24.     Dr. Ende was ordered to a Fitness of Duty Evaluation on January 14, 2020 that was based on an incident not reasonably related to his job responsibilities.

25.     The initial January 14th notice arbitrarily cited additional incidents and interactions, and the subsequent February 4th notice was unsupported by documentation from Dr Ende's personnel file.

26.     Dr. Ende will be harmed irreparably by taking away his ability to conduct future research and educate the next generation of pathologists/

27.     Society will be harmed by limiting potential break throughs in prenatal care and care of victims of nuclear terrorist attack.

28.     Without any valid reasons for a fitness of duty evaltion, the only logical explination is that Dr. Ende is being forced out of his job do to his age (95 years old) contrary to both the Americans with Disabilites Act and the Law Against Discrimination.

**WHEREFORE**, Plaintiff Dr. Norman Ende, M.D. demands judgment as follows:

a) Rutgers University discontinue any request that Dr. Norman Ende, M.D. complete a fitness of duty evaluation as a condition of his return to his regular duties;

b) That opinions submitted by Dr, Norman Ende's doctors pertaining to his physical condition be given full consideration with regard to his ability to not pose any threat to his own personal safety;

c) That no record be created in his employee file regarding the attempt of Rutgers University obtain a fitness of duty evaluation;

d) That he be returned to his duties as a classroom professor as well as a research professor;

e)  That the University be restrained from any attempts to remove Dr. Ende without cause or due to the non-competition of an illegal fitness of duty evaluation.

f)  That he be granted any damages that are deemed equitable by the Court; and

g)  Any other relief that the Court deems necessary, just and proper.

Casha & Casha, LLC

Attorneys for Plaintiff

Dated: February ___7___, 2020

Donald S. Dinsmore
For the Firm

## DESIGNATION OF TRIAL COUNSEL

Pursuant to _R. 4:25-4_, Donald S. Dinsmore, Esquire, is hereby designated as trial counsel for the Plaintiff in the above matter.

CASHA & CASHA, LLC
Attorneys for Plaintiff

Dated: February 7 , 2020                By: _____
                                              Donald S. Dinsmore, Esquire
                                              For the Firm

## Certification Pursuant to Rule 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

CASHA & CASHA, LLC
Attorneys for Plaintiff

Dated: February 7 , 2020                By: _____
                                              Donald S. Dinsmore, Esquire
                                              For the Firm

### ***RULE 4:5-1*** CERTIFICATION

THE UNDERSIGNED hereby certifies that:

1.      I am an attorney at law of the State of New Jersey and an Associate with the law firm of Casha & Casha, LLC.  In that capacity, I am familiar with the facts of this case.

2.      To the best of my knowledge, information and belief, our investigation and investigation on behalf of our client has disclosed that the matter in controversy is not the subject of any other court or arbitration proceeding and that no other such proceeding is contemplated, nor has it disclosed any other parties who should be joined in the within action.

3.      I am aware of my continuing obligation during the course of this litigation to file and serve on all other parties and with this Court an amended Certification if there is a change in the facts stated in this Certification.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

CASHA & CASHA, LLC
Attorneys for Plaintiff

Dated:  February 7, 2020            By: _____

Donald S. Dinsmore, Esquire
For the Firm

W:\Ende - N\20019\Verified Complaint.doc

# Exhibit 2

Donald S. Dinsmore, Esquire
Attorney ID #000402007
Casha & Casha, LLC
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
<u>Attorneys for the Plaintiff Dr. Norman Ende, M.D.</u>

|  |  |  |
|---|---|---|
| | : | |
| **DR. NORMAN ENDE, M.D.,** | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | : | CHANCERY DIVISION: MORRIS COUNTY |
| | : | GENERAL EQUITY PART |
| v. | : | |
| | : | DOCKET NO. |
| **RUTGERS UNIVERSITY, RUTGERS** | : | |
| **NEW JERSEY MEDICAL SCHOOL,** | : | Civil Action |
| **ROBERT L. JOHNSON, M.D., FAAP** | : | |
| **and JOHN DOES 1-10,** | : | ORDER TO SHOW CAUSE WITH |
| Defendants. | : | TEMPORARY RESTRAINTS PURSUANT |
| _____ | : | TO RULE 4:52 |

This matter being brought before to the court by Donald S. Dinsmore, Esquire, attorney for

Plaintiff, Dr. Norman Ende, M.D., seeking relief by way of temporary restraints pursuant to *R.* 4:52,

based upon the facts set forth in the Verified Complaint filed herewith; and it appearing that

immediate and irreparable damage will probably result before notice can be given and a hearing

held, and for good cause shown.

It is on this _____ day of _____, 2020, **ORDERED that**

Defendants, Rutgers University, Rutgers New Jersey Medical School and Dean Robert L. Johnson,

M.D., F.A.A.P., appear and show cause before the Superior Court at the Morris County Courthouse,

Washington and Court Street in Morristown, New Jersey 07963 at _____ o'clock in the noon or as

soon thereafter as counsel can be heard, on the _____ day of _____, 2020 why an order

should not be issued preliminarily enjoining and restraining Defendants, Rutgers University, Rutgers New Jersey Medical School, Robert L. Johnson, M.D., FAAP, from:

1.    Discontinuing requests for a fitness of duty evaluation;

2.    Reinstating Dr. Ende to his responsibilities in the classroom and regarding research for Rutgers New Jersey Medical School;

3.    Granting any damages deemed appropriate by the Court; and

4.    Granting such other relief as the Court deems equitable and just.

And it is **further ORDERED that** pending the return date herein, the Defendant are temporarily enjoined and restrained from:

1.    Preventing Dr. Norman Ende from performing his duties in both the classroom and with regard to research for Rutgers University; and

2.    Requesting a fitness of duty evaluation.

3.    Removing Dr. Ende from employment with Rutgers.

And it is **further ORDERED that**:

1.    The Defendant may move to dissolve or modify the temporary restraints herein contained on two (2) days' notice to the Plaintiff's attorney.

2.    A copy of this Order to Show Cause, Verified Complaint, legal memorandum and any supporting affidavits or certifications submitted in support of this application be served upon the Defendants by Registered Mail Return Receipt Requested within _____ days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

3.      The Plaintiff must file with the court his Proof of Service of the pleadings on the Defendants no later than three (3) days before the return date.

4.      Defendants shall file and serve a written response to this Order to Show Cause and the request for entry of injunctive relief and Proof of Service by _____.   The original documents must be filed with the Clerk of the Superior Court in the county listed above.   A directory of these offices is available in the Civil Division Management Office in the county listed above and online at njcourts.gov/forms/10153_deptyclerklawref.pdf.  You must send a copy of your opposition papers directly to Judge _____,  whose address is _____, New Jersey.  You must also send a copy of your opposition papers to the Plaintiff's attorney whose name and address appears above, or to the Plaintiff, if no attorney is named above.   A telephone call will not protect your rights; you must file your opposition and pay the required fee of $_____  and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the Plaintiff is seeking.

5.      The Plaintiff must file and serve any written reply to the Defendant's Order to Show Cause opposition by _____.  The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of Judge _____.

6.      If the Defendant does not file and serve opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a Proof of Service and a proposed form of order at least three days prior to the return date.

7.      If the Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three (3) days before the return date.

8.      Defendant take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey.  The Verified Complaint attached to this Order to Show Cause states the basis of the lawsuit.  If you dispute this complaint, you, or your attorney, must file a written answer to the Complaint and Proof of Service within 35 days from the date of service of this Order to Show Cause; not counting the day you received it.

These documents must be filed with the Clerk of the Superior Court in the county listed above.  A directory of these offices is available in the Civil Division Management Office in the county listed above and online at njcourts.gov/forms/10153_deptyclerklawref.pdf.  Include a $_____ filing fee payable to the "Treasurer State of New Jersey."  You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default.  Please note:  Opposition to the Order to Show Cause is not an Answer and you must file both.  Please note further: if you do not file and serve an Answer within 35 days of this Order, the Court may enter a default against you for the relief plaintiff demands.

9.      The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than _____ days before the return date.

_____

J.S.C.

W:\Ende - N\20019\Order to Show Cause with Temporary Retraints.doc

Donald S. Dinsmore, Esquire
Attorney ID #000402007
Casha & Casha, LLC
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Attorneys for the Plaintiff Dr. Norman Ende, M.D.

|  |  |  |
|---|---|---|
|  | : |  |
| **DR. NORMAN ENDE, M.D.,** | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | : | CHANCERY DIVISION: MORRIS COUNTY |
|  | : | GENERAL EQUITY PART |
| v. | : |  |
|  | : | DOCKET NO. |
| **RUTGERS UNIVERSITY, RUTGERS** | : |  |
| **NEW JERSEY MEDICAL SCHOOL,** | : | Civil Action |
| **ROBERT L. JOHNSON, M.D., FAAP** | : |  |
| **and JOHN DOES 1-10,** | : | FINAL ORDER |
| Defendants. | : |  |
|  | : |  |

This matter being brought before to the court by Donald S. Dinsmore, Esquire, attorney for

Plaintiff, Dr. Norman Ende, M.D., AND THE Court having reviewed the moving papers and

Certification in support thereof, and for good cause shown;

It is on this _____ day of _____, 2020,

**ORDERED AND ADJUDGED that:**

1.      Requests for a fitness of duty evaluation;

2.      Reinstating Dr. Ende to his responsibilities in the classroom and regarding research

for Rutgers New Jersey Medical School;

3.      Granting any damages deemed appropriate by the Court; and

4.      Granting such other relief as the Court deems equitable and just.

Be and the same is hereby _____

Dated: _____                    _____

                                                                                    J.S.C.

W:\Ende - N\20019\Final Order.doc

Donald S. Dinsmore, Esquire
Attorney ID #000402007
Casha & Casha, LLC
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Attorneys for the Plaintiff Dr. Norman Ende, M.D.

| | | |
|---|---|---|
| **DR. NORMAN ENDE, M.D.,** | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff | : | CHANCERY DIVISION: MORRIS COUNTY |
| | : | GENERAL EQUITY PART |
| v. | : | |
| | : | DOCKET NO. |
| **RUTGERS UNIVERSITY, RUTGERS** | : | |
| **NEW JERSEY MEDICAL SCHOOL,** | : | Civil Action |
| **ROBERT L. JOHNSON, M.D., FAAP** | : | |
| **and JOHN DOES 1-10,** | : | CERTIFICATION OF DR. NORMAN ENDE, |
| Defendants. | : | M.D. IN SUPPORT OF ORDER TO SHOW |
| | : | CAUSE |

I, **DR. NORMAN ENDE, M.D.**, being of full age, upon my oath duly sworn, do hereby

certify as follows:

1.      I received my medical degree from the College of Virginia, Richmond in 1947.

2.      From 1943 until 1985 I served in the United States Navy Reserves and reached the

Office of Captain.

3.      From 1947 to 1952, I served as an intern for the Bronx Hospital and then as a

resident in New Orleans, Louisiana as both a resident of surgery and a resident of pathology (see

Exhibit "A", this applies for numbered paragraphs 2 through 10).

4.      From 1954 until 1970, I served as an Instructor, as an Assistant Professor in

pathology, and Professor in pathology for Baylor Medical School, Vanderbilt University and Emory

University respectively.

5.      From 1971 to present, I serve as a Professor of pathology for UMDNJ (which later

became absorbed by the New Jersey Medical School of Rutgers University).

6.      From 1974 to 1975, I was the Chairman of pathology for UMDNJ.

7.      From 1977 to 1996, I was the Director of the tissue typing laboratory for UMDNJ.

8.      I have authored multiple scholarly articles regarding fetal cord blood and transfusions.

9.      I have received several honors over the course of my career including: a determination by the Assistant Secretary of Policy Evaluation and research that my plan for Mass Casualties for a Nuclear Terrorist Attack is the only plan that can deal with mass casualties, this has been introduced to both the USA and China; In 2003 I was selected to the Honorary Society of Virginia Commonwealth University Phi Kappa Phi alumnus; In 2002 received the "STAR" award from the Medical College of Virginia (Virginia Commonwealth University) for pioneering work in on Human Umbilical Cord Blood, and presented a lecture on human Umbilical Cord Blood" at the annual lecture of Sigma Xi, Distinguished Lecturer Services on May 12, 1999.

10.     Since 1969 I have engaged in extensive research regarding the following subjects: the treatment of clinical patients with cord blood, addressing health concerns such as Alzheimer's disease, neurological trauma, Diabetes 1 & 2, Parkinson's disease and Atherosclerosis, the damage to newborns; research regarding the clamping of umbilical cords and the damages to newborns; and the treatment of mass casualties from a nuclear terrorist attack.  My research regarding the treatment of mass terrorist attacks has been acknowledged in letter by the United States Air Force (see exhibit "B").

11.     It is my understanding that clinical trials were recently set to begin on this research and it's affect in the above-mentioned diseases.

12.     On January 6, 2020, I almost fell while at the Medical School Building.

13.     On January 14, 2020, I received a letter stating that I would not be permitted to return to work without a fitness of duty evaluation (see Exhibit "C").

14.     It is my belief that the January 14, 2020 letter is not reasonably based on my professional duties.

15.     It is my belief that the incidents and interactions mentioned are arbitrary and capricious.

16.     On January 17, 2020, my doctor, Dr. Steven Guidis, M.D. a Nephrological Specialist, and my attending Physician stated in a letter sent to Dean Johnson that it was of his opinion that I had collapsed due to orthosatic hypotension due to dehydration, and with a modification of my medication, I should be able to return to work (see Exhibit "D").

17.     On January 20, 2020, my Cardiologist, Dr. Robert Wang, M.D., F.A.C.C., stated that I had collapsed due to orthosatic hypotension, and with a modification to my medications I should be able to return to work (see Exhibit "E").

18.     I received a February 4, 2020 letter outlining further concerns and incidents by Dean Johnson, although have not received the documents from my personal file supporting the existence of such concerns and incident (see Exhibit "F").

19.     I dispute the following claims in the letter: that I actually collapsed (I was caught), that I lack focus or understanding (my hearing aids sometimes are affected at the medical school), I also dispute that there have been multiple soiling incidents in the handicap bathroom, to the contrary the lock to the handicap bathroom is difficult and I have asked for help with it on multiple occasions. My attorney subsequently replied requesting documentation (See Exhibit "G".)

20.     My research is one of the most important things in my life right now, and to deprive me of it would create a substantial hardship which could not be compensated by monetary means. I

21.    It is my belief that Dean Johnson is trying to remove me from my job due to my age.

I hereby certify that the forgoing statements made by me are true and to the best of my knowledge and belief.  I am aware if any of the forgoing statements made by me are false, I am subject to punishment.


Dated: February  5    , 2020                                _____

                                                                              **Dr. Norman Ende, M.D.**

W:\Ende - N\20019\Certification of Dr. Norman Ende, M.D. in Support of Order to Show Cause.doc

# EXHIBIT "A"

## CURRICULUM VITAE

**Name and position:**

Norman Ende, M.D.
Professor of Laboratory Medicine and Pathology
Rutgers-New Jersey Medical School
Department of Laboratory Medicine and Pathology
185 South Orange Avenue, C565
Newark, NJ 07103-2714

**Education:**

| | |
|---|---|
| 1945  BS | University of Richmond, VA |
| 1947  MD | Medical College of Virginia, Richmond, VA |

**Internship and Residencies:**

| | |
|---|---|
| 1947-48 | Intern, Bronx, Hospital, NY |
| 1948-49 | Resident in Pathology, VAH, New Orleans, LA |
| 1949-50 | Resident in Surgery, VAH |
| 1950-52 | Resident in Pathology, VAH |

**Military:**

| | |
|---|---|
| 1943-85 | Captain, U.S.N.R. (Ret.) |

**Licensure:**

{New Jersey - MA24754}
New Jersey Lab Director - MF 00412
Virginia - current

**Certification:**

| | |
|---|---|
| 1953 | American Board of Pathology - Clinical |
| 1954 | American Board of Pathology - Anatomical |

**Narcotics Certification:**

New Jersey CDS No. D10115
United States DEA No. AE8019071

**University Appointments:**

| | |
|---|---|
| 1954-55 | Instructor, Baylor Medical School, Houston, TX |
| 1958-61 | Assistant Clinical Professor of Pathology, Vanderbilt Univ., Nashville, TN |
| 1961-64 | Assistant Professor of Pathology, Vanderbilt Univ. |
| 1964-67 | Associate Professor of Pathology, Vanderbilt Univ. |
| 1967-70 | Professor of Pathology, Emory Univ, Atlanta, GA |
| 1971-Present | Professor of Pathology, UMDNJ-New Jersey Medical School |
| 1974-75 | Acting Chairman, Pathology, UMDNJ-NJMS |
| 1977-96 | Director, Tissue Typing Laboratory, Lab. Med. & Path., UMDNJ |

**Hospital Appointments:**

| | |
|---|---|
| 1954-55 | Pathologist, VAH, Houston, TX |
| 1955-58 | Chief of Laboratory Service, VAH, Fresno, CA |

| | |
|---|---|
| 1958-67 | Chief of Laboratory Service, VAH, Nashville, TN |
| 1967-70 | Chief of Pathology, Grady Memorial Hospital, Atlanta, GA |
| 1970-77 | Chief of Clinical Pathology, UMDNJ-University Hospital |
| 1977-96 | Director, Tissue Typing Laboratory and Immunopathology |
| 1978-Present | Consultant Emeritus, Newark Beth Israel Hospital, Newark, NJ |
| 1979-Present | Pathologist, UMDNJ-University Hospital |

**Board of Directors/Trustees/Governors:**

| | |
|---|---|
| 1980-83 | Board of Governors, American Association University Professors, NJMS |

**MAJOR COMMITTEE ASSIGNMENTS:**

**National and Regional**

| | |
|---|---|
| 1968-71 | Director, Television series: "Audiovisual Training Program in Pathology" --A series of 90 lectures on television tapes in Clinical and Anatomical Pathology. Produced by National Medical Audiovisual Center. Completed and released, 90 lectures in 1972. |
| 1985-86 | President, Board of Governors, New Jersey Medical School and Dental School Chapter Chairman Council AAUP-UMDNJ |
| 1984-85 | 1st Vice President, Amer. Assoc. University Professors, NJMS |
| 1986-95 | Member, Board of Directors, New Jersey HLA Registry Foundation |

**UMDNJ**

| | |
|---|---|
| 1984-85 | Executive Committee, UMDNJ-University Hospital, Newark, NJ |
| 1985-86 | President, AAUP, UMDNJ-NJ Medical School, Newark, NJ |

**Department of Pathology and Laboratory Medicine**

| | |
|---|---|
| 1970-2013 | Lecturer, General Pathology Course for Sophomore Medical Students. Bone pathology lectures for Dental School Students. |
| 1983-1996 | Graduate School Committee |
| 1983-86 | Chairman, Faculty Practice Committee |

**Memberships, Offices and Committee Assignments in Professional Societies**

American College of Physicians
American Society of Clinical Pathology
College of American Pathologists
American Society of Nuclear Medicine
American Association of Pathologists
American Medical Society
The Society of Medical Consultants to the Armed Forces
Radiation Research Society

**Research Interests:**

Rape, homicide, and VMA levels
Deformation of cells
Metastatic giant cell tumor of bone
Umbilical cord blood and its potential for bone marrow transplantation
Umbilical cord blood and its role for treatment of radiation injuries.

**Current Major Research:**
Umbilical Cord blood Stem cells (Berashis Cells)

To make New Jersey the 1st State, Rutgers the first medical school and the University Hospital the first
Hospital to develop a plan for treatment of mass casualties from a nuclear explosion.
To continue research on the use of cord blood (unmodified) on animal models of human medical disease
and neoplasm (currently Gliablastoma mulitforme) and translation to clinical trials.

**Grants**

(Principal Investigator)

| | |
|---|---|
| 1965-68 | NIH Mast cell enzymes - surgical hemorrhagic oozing |
| 1966-67 | VAH Pathology research |
| 1967-68 | VAH Transplantation immunology |
| 1969-76 | NIH Immunology and cytology of human renal transplant |
| 1977-78 | Oncogenic viruses and neoplasia in human allografts |
| 1977-78 | Deborah Heart Lung Institute, Antilung antibodies in various pulmonary disease states |
| 1979-82 | Stoney Wold Herbert Fund. Antilung antibodies in pulmonary disease |
| 1985-Present | Abraham Ende Foundation Grant Current total: $ 600,000 |
| 1993-1994 | Norton Lilly Incorp., $ 70,000 |
| 1995-1998 | Norton Lilly Incorp., $ 30,000 ($10,00 per year) |

**Major Teaching Experience (Director/co-director)**

| | |
|---|---|
| 1970-77 | Director, Clinical Pathology Residency Training Program |
| 1972-76 | Director, Clinical Pathology Course for Sophomore Students |
| 1981-96 | Bone Radiology Pathology Conference |

**Principal Clinical and Hospital Service Responsibilities:**

Clinical and Anatomic Pathology

**Honors:**
Military letter of commendation from Charles B. Green Lieutenant General, USAF, MC, CFS  Surgeon
General thank me for  "Ongoing efforts supporting our Nation's defense "



Accomplishment;  Assistant Secretary of Policy Evaluation and Research (ASPER) has determined
that my plan for Mass Casualties from Nuclear Terrorist Attack is the only plan that can deal with
mass casualties. This has been introduced to both USA and China Security.

2003, selected to the Honorary Society, Virginia Commonwealth University, Phi Kappa Phi in the alumnus
category for my "gift to humanity".

2002, received the "STAR" Award from the Medical College of Virginia (Virginia Commonwealth
University) for pioneering work on Human Umbilical Cord Blood.

"Human Umbilical Cord Blood" Presented at annual lecture of Sigma Xi. Distinguished Lecturer Series,
May 12, 1999.

**BIBLIOGRAPHY**

<u>**ORIGINAL REPORTS**</u>

1.      Ende N, Ziskind J: Air embolism in blood donors. JAMA 154:1483-85, 1950.

2.      Ende N, Daron PB, Richardson LK, Raider L, Ziskind J: Plasma-cell tumor of the stomach. Radiol 55:207-213, 1950.

3.      Ende N: Tourniquet for intravenous therapy for patients in shock. Am J Surg 80:915-916, 1950.

4.      Ende N, Pizzolotto P, Ziskind J: An unusual case of carcinosarcoma of the esophagus. Am J Roent Rad, 65:227-231, 1951.

5.      Ende N, Ziskind J: Asphyxia by tracheobronchial secretions. Surg Gyn Obstet, 94:57-64, 1952.

6.      Ende N, Pizzolotto P, Ziskind J: Hodgkin's disease associated with histoplasmosis. Cancer 5:763-769, 1952.

7.      Ende N, Brazda PG, Ziskind J: Elevated serum potassium as a possible cause of death in hyperactive states. Am J Med Sci, 224:638-642, 1952.

8.      Ende N, Pizzolotto P, Ziskind J: Sicklemia. Ann Int Med 42:1065-1075, 1955.

9.      Ende N: Congenital brain tumor in one of identical twins. Cancer 8:1057-59, 1955.

10.     Ende N, Gelpi AP: Pathologic changes noted in bone marrow in a case of "Q"Fever. Blood,        12:483, 1957. (letter to editor)

11.     Ende N, Gelpi AP: Pathological changes noted in bone marrow in a case of "Q" Fever. Arch Int Med, 100:793-796, 1957.

12.     Gelpi AP, Ende N: An hereditary anemia with hemochromatosis: Studies of an unusual hemopathic syndrome resembling thalassemia. Am J Med 25:303-314, 1958.

13.     Gelpi AP, Ende N: Coronary embolus with myocardial infarction and rupture. Ann Int Med 50:511-519, 1959.

14.     Ende N: Infarction of the bowel in cardiac failure. N Eng J Med 58:879-881, 1958.

15.     Ende N: Radio-isotope unit. A six-month report. Am J Clin Path 29:482-483, 1958. (letter to editor)

16.     Ende N, Cherniss EI: Splenic mastocytosis. Blood 13:631-641, 1958.

17.     Ende N, Cherniss EI: Mast cells, histamine and scrotonine studies of the human spleen. Am J Clin Path 30:35-36, 1958.

18.     Ende N, Cherniss EI: Mast cell disease. Med Times 87:1577-1578. December, 1959.

19.     Ende N: Studies of amylase activity in pleural diffusions and ascites. Cancer 13:283-287, 1960.

20.     Ende N, Auditore JV: Mast cells and fibrinolysis. Nature 189:593, 1961.

21.     Ende N: Amylase activity in body fluids. Cancer 14:1109-1114, 1961.

22.     Ende N, Auditore JV: Fibrinolytic activity of human tissues and dog mast cell tumors. Am J Clin Path 36:16-24, 1961.

23.     Ende N: Starvation studies with special reference to cholesterol. Am J Clin Nutr 11:270-280, 1962.

24.     Mayfield GR, Ende N, Federspiel CF: Studies with intravenous triolein with relation to
        age of    patient. Am J Card 10:193-97, 1962.

25.     Ende N, Auditore JV: Esterolytic activity of canine and human mast cells.Am J Clin Path 38:501-510,
        1962.

26.     Ende N, Auditore JV: Circulating fibrinolytic activator hemorrhagic diathesis. Ann Surg 158:117-125,
        1963.

27.     Auditore JV, Ende N, Katayama Y: Multiple character of canine mast cell proteolytic
        activity. Life Sci 6:375-381, 1963.

28.     Ende N, Woods LD, Shelley HS: Carcinoma originating in ducts surrounding the
        prostatic urethra. Am J Clin Path 40:183-189, 1963.

29.     Ende N: Thromboangiitis obliterans with special reference to coagulation and clot lysis.
        Vas Dis 1:83-88, 1964.

30.     Ende N, Katayama Y, Auditore JV: Multiple proteolytic enzymes in the human mast
        cells. Nature 20:1107-1198, 1964.

31.     Ende N, Auditore JV: Activation of fibrinolytic system in a dog with mast cell tumor.
        Am J    Phys 106:567-572, 1964.

32.     Ende N: Problems in pathology related to renal transplantation, with special reference to
        the use of "Old" Kidneys. Presented at the annual meeting of College of American
        Pathologists and The American Society of Clinical Pathologists, October 17-23, 1964.

33.     Ende N: Recent findings in thromboangiitis obliterans. Res Rev 42-44, 1963-64.

34.     Zukoski CF, Ende N: Membranous glomerular nephritis complicating prolonged survival
        of a homographed kidney. Transplantation 3;118-122, 1965.

35.     Katayama Y, Ende N: Esterase studies on dog mast-cell tumors. Nature 205:190-191,
        1965.

36.     Ende N, Zudoski CF: Emergency autopsy for the selection of donor kidneys -the use of "senile" kidneys.
        JAMA 191:902-904, 1965.

37.     Ende N: The pathologists role in selection of donor kidneys. The Bulletin of Pathology,
        April, 1966.

38.     O'Neill JA Jr, Ende N, Collins is, Collins HA: A quantitative determination of perfusion
        fibrinolysis. J Thor Card Surg 51:777-782, 1966.

39.     Adkins RB, Ende N, Gobbel WG Jr: Ultrastuctural alterations of the gastric mucosa
        following gastrin administration. Surg Forum 17:297-299, 1966.

40.     Symbas PN, Abbott OA, Ende N: Surgical stress and its effects on serum cholesterol.
        Surg 61:221-227, 1967.

41.     Adkins RB, Ende N, Gobbel WG Jr: A correlation of pariental cell activity with
        ultrastructural alterations. Surg 62:1059-1069, 1967.

42.     Ende N, Williamson EF: Demonstration by the antigloulin consumption test of humoral
        antibodies after homografting. Trans 5:1524-1528, 1967.

43.	Ende N, Williamson EF: Humoral antibodies and human renal homograft rejection. Am J Clin Path 49:155-160, 1968.

44.	Ende N, Kelly LV, Killen DA: Estimate of ischemic injury of the kidney by cytologic examination. Am J Clin Path 51:301-308, 1968.

45.	Ende N, Killen DA, Zukowski CF: Renal ischemic injury in various categories of cadaver donors. Trans 6:744-745, 1968.

46.	Ende N, Kelly LV, Killen DA: Determination of ischemic injury of cadaveric donor kidney by cytologic imprints. Am J Clin Path 52:87-88, 1969.

47.	Cohen P, Stout G, Ende N: Serologic reactivity in consecutive patients admitted to a general hospital. Arch Intern Med 124:364-367, 1969.

48.	Ende N, Summers KC: Antigens of lymph node cells absent from peripheral lymphocytes.	Transplant 9:514-515, 1970.

49.	Katayama Y, Auditore JV, Ende N: Purification and characterization of a mouse mast cell esteroprotease. Exp Molec Path 14: 228-242, 1971.

50.	Ende M, Ende N: Hematopoietic transplantation by means of fetal (cord) blood a new method. Virginia Med Monthly 99:276-80, 1972.

51.	Ende N: The course of transplanted cadaver donor kidneys with previously existing pathology. Amer J Path 75: 543-554, 1974.

52.	Ende N: United States medicine and the American medical student. Pathologist 29:247-251, 1975.

53.	Ende N, Orsi EV, Britten TL, Baturay NA, Genova TF: Anti-kidney cytotoxic antibodies in human renal allografts. Amer J Clin Path 66:395-400, 1976.

54.	Orsi EV, Ende N, Howard JL, Baturay NZ, Ribot S, Islami H: High incidence of virus isolation from donor and recipient tissue associated with renal transplantation. Nature 5651:372-373, 1978.

55.	Ende N, Orsi EV, Veith FJ, Baturay NA, Howard JL, Britten TL: Anti-lung antibodies associated with human allografts. Am Rev Resp Dis, 17:853-857, 1978.

56.	Ende N, Pierce JC, Westervelt F Jr, Williams M, Lee HM, Stickel DL, Womboy DG, Chandler JT, Johnson KH, Currier CB, Light JA, Barry AM: Retrospective correlation of clinical and histologic findings of 189 exchanged kidneys. Kidney Internat 15:559-566, 1979.

57.	Ende N, Orsi EV, Baturay NZ, Britten TL: Properties of a cytotoxic kidney antibody associated with human kidney transplantation. Amer J Clin Path 71:543-548, 1979.

58.	Ende N, Currier CB, Johnson KH, Lee HM, Williams M, Wombolt DG: Unusual vascular findings in transplanted kidneys. Hum Pathol 13::272-278, 1982.

59.	Ende N, Grizzanti JN, Orsi EV, Saffrstein BH, Reichman L, Baturay-Smith N: Antilung antibodies in asthma. Am J Clin Path 78: 758-761, 1982.

60.	Ende N: Paternity testing: Assets and pitfalls. NJ Law J 110:725, 1982

61.   Ende N, Orsi EV, Buechel FF, Baturay NZ, Zelikoff JT: Antibodies to synovial derived cells in patients undergoing artificial prosthesis implants. J Orthoped Res 3:78-83, 1985.

62.   Hung C, Kahn S, Marguao B, Ende N, Reichman L: HLA, ABO and antigens in tuberculosis. Ann Rev Resp Dis 132:382-385, 1985.

63.   Ende N, Grizzanti JN, Orsi EV, Lubansky KP, Amoruso RC, Reichman L, Zelikoff JT:   Sarcoid and cytotoxic lung antibodies. Life Sci Med, 39:2435-2440, 1986.

64.   Ende N, Gertner SB, Hwang SG, Socha B. Elevated creatinine levels in rape assault victims. Am J Forensic Med Path, 8: 291-295, 1987.

65.   Connor E, Gupta S, Joshi V, DiCarlo F, Offenberger J, Minnefor A, Uy C, Oleske J, and Ende N: Acquired immunodeficiency syndrome–associated renal disease in children. Journal of Pediatrics, 113:39-44, 1988.

66.   Ende N, Gertner SB, Hwang SG, and Kadi RS: Measurements of postcoital sympathetic activity in females by means of vanillylmandelic acid. Clin. Hormones and Behavior, 23:150-156, 1989.

67.   Ende N, Rameshwar P, Ende M: Fetal cord blood's potential for bone marrow transplantation. Life Sciences, 44:1987-1990, 1989.

68.   Ende N, Giuliani D, Ende M, Ponzio NM: Production of human to mouse xenografts by umbilical cord blood. Life Sciences, 46:1373-1380, 1990.

69.   Ende N, Gertner SB, Socha B: Unexpected changes in urinary catecholamines and vanillylmandelic acid following rape assault. Clin. Hormones and Behavior, 24:62-70, 1990.

70.   Ende N, Ende M: Spotlight on cord blood transplant. Va. Med. Quarterly 117:282, 1990.

71.   Ende N, Ponzio NM, Athwal RS, Ende M, Giuliani DC: Murine survival of lethal irradiation with the use of human umbilical cord blood. Life Sciences, 51:1249-1253, 1992.

72.   Ende, N. Collection of umbilical Cord Blood for Transplantation. Blood, 80:6, pp 1623-1631 (September 15, 1992).

73.   Ende M, Smith, III CW, Grizzard, Jr WF, Harkins TJ, Fly NJ, Ende, N: Sterility of the umbilical cord. Letter to Editors: Amer J OB/Gyn, 171:279, 1994.

74.   Ende N, Ponzio NM, Giuliani D, Ende M, Bagga PS, Godyn J, and Athwall RS. The effect of human cord blood on SJL/J mice after chemoablation and irradiation and its possible clinical significance. Immuno Inves 24:(6) 999-1012, 1995.

75.   Ende, N, Czarneski J and Raveche E. Brief Communication. Effect of human cord blood transfer on survival and disease activity in MRL -1pr/1pr mice. Clin Immun and Immunopath. 75:190-195, 1995.

76.   Ende, N: Letters to the Editor: Cord Blood Collection: Effects on Newborns (Medical-Legal). Blood 86:(12)4699-4708, 1995.

77.   Blacksin, M, Ende, N, Benevenia, J: Magnetic resonance imaging of intraosseous

lipomas: a radiologic-pathologic correlation. Skeletal Radiol 24:37-41, 1995.

78.  Ende, N: Questions to be answered about umbilical cord blood. Letters to the Editor:
     Transfusion 36:288-289, 1996.

79.  Ende, N, Lu, S, Ende, M, Giuliani, D, Ricafort, R, Alcid, M, Deladisma, M, Bagtas-Ricafort, L: Potential
     effectiveness of stored cord blood (non-frozen) for emergency use. Jr. of Emer Med 14:6; 673-677, 1996.

80.  Ende N, Schwartz RA. Autoimmunity and Aids: A Commentary. J of Med. 28 (5 & 6)
     273-274, 1997.

81.  Lu S, Ende N: Potential for clinical use of viable pluripotent progenitor cells in blood
     bank stored human umbilical cord blood. Life Sciences 61:(12) 113-123, 1997.

82.  Rameshwar P, Smith I, Ende N, Batarseh HE, Ponzio NM:  Endogenous hematopoietic    reconstitution
     induced by human umbilical cord blood cells in immunocompromised
     mice:  Implications for adoptive therapy. Experimental Hematology, June 1998.

83.  HLA DR and Ab surface antigens correlate with cell shape (surface area): Ende N, Ritter
     AB. Life Sciences, Vol 63, No 15, pp. 1353-1359, 1998.

84.  Czarneski J, Lin Y, Ende N, Raveche E: Effects of Cord Blood Transfer on the
     Hematopoietic Recovery Following Sublethal Irradiation in MRL *lpr/lpr* Mice. Cord
     Blood Factors and Stem Cells. Proc Soc Exp Bio Med, Vol 220 pp 79-87, Feb 1999.

85.  Rameshwar P, Smith I, Ende N, Batarseh HE, Ponzio NM: Endogenous hematopoietic reconstitution
     induced by human umbilical cord blood cells in immunocompromised mice: Implications for adoptive
     therapy. Experimental hematology: 27, pp. 176-185, Jan 1999.

86.  Ende N, Lu S, Mack R, Ponzio NM: The feasibility of using blood bank stored (4°C) cord blood,
     unmatched for HLA for marrow. Amer Jr of Clin Path: Vol.111, No.6, June 1999.

87.  Ende N, Ritter AB. HLA DR and AB surface antigens correlate with cell shape (surface area):. Life
     Sciences: Vol 63, No.15, pp. 1353-1359, 1999.

88.  Ende N Chen R. Weinstein F Bagtas-Ricafort L Ende M: Human umbilical cord blood (HUCB) and
     effect on sod mice (amyotrophic lateral sclerosis) Modern Pathology, Vol. 13 January, 2000.

89.  Ende N, Weinstein L, Chen R, Bagtas-Ricafort L, Ende, M. Human umbilical cord blood (HUCB) and
     effect on sod mice (amyotrophic lateral sclerosis). Life Sciences, 2000;67:53-59.

90.  Chen R, Ende N. The potential for the use of human umbilical cord blood mononuclear cells in the
     treatment of (amyotrophic lateral sclerosis) sod1 mice. Journal of Medicine, Vol 31, No. 1,2, pp. 21-
     30;2000.

91.  Ende N, The Berashis cell: A review is it similar to the embryonic stem stem cell? Journal of Medicine,
     Vol. 31, Nos.3 & 4 2000.

92.  Ende N., Chen R., Human umbilical cord blood cells ameliorate Huntington's disease in
     transgeneic mice. Journal of Medicine, Vol 32, Nos. 3&4; 231-240 2001.

93.  Ende N., Chen R, David Ende –Harris Human umbilical cord blood cells ameliorate Alzheimier's
     dieases in transgenic mice Journal of Medicine Vol 32, Nos. 3&4 241-247 2001.

94.  Ende, N., Lu, S., Alcid, M., Chen, R., Mack, R. Pooled umbilical cord blood as a possible universal donor
     for marrow reconstitution and use in nuclear accidents. Life Sciences Vol 69, No. 13, 1531-1539, 2001.

95.   Ende, N., Chen, R. NOD/LTJ Type I diabetes in mice and the effect of stem cells (Berashis) derived from hum umbilical cord blood. Journal of Medicine 23:180-188 2002.

96.   Ende, N., Chen, R. Parkinson's disease mice and human umbilical cord blood. Journal of Medicine 33:173-180, 2002.

97.   Ende, N. Commentary: Berashis cells in human umbilical cord blood vs. embryonic stem cells. Journal of Medicine 33:167-172, 2002.

98.   Ende, N., Chen R., Reddi, A.S. Transplantation of Human Umbilical Cord Blood Cells Improves and Glycemia and Glomerular Hypertrophy in Type 2 Diabetic Mice. Biophysical Research Communications 321 (1): 168-171, 2004.

1.    Ende, N., Chen R., Reddi, A.S. Effect of Human Umbilical Cord Blood Cells on Glycemia and Insulitis in Type I Diabetic Mice.   Biochem Biophys Res Commun. 325(3): 665-9, 2004.

100.  Ende, N, Ende, M, Chen, R, Coakley, K, and Reddi, AS. Prevention of Atherosclerosis in LDL receptor mutant mice by human umbilical cord blood cells.  Research Commmunications in molecular Pathology and Pharmacology, Volumes 117, 118, 2005.

101.  Ende N, Chen R, Reddi A. Administration of human umbilical cord blood cells delays the onset of prostate cancer and increases the lifespan of the TRAMP mouse. Cancer Letters 231:123-128.  2006.

102.  Ende, N, Reddi, A. Administration of human umbilical cord blood to low birth weight infants may prevent the subsequent development of type 2 diabetes. Medical Hypotheses 66:1157-1160, 2006.

103.  Ende N, Portuondo N, Iffy L. The time of clamping the umbilical cord blood  .  (A controversial Aspect of Stem Cell Research. Hungarian Journal of Obstetrics and Gynecology 69: (1); 5-8, 2006.

104.  Iffy, L, Varadi V, Portuondo N, Ende N. Collection of fetal blood for stem cell research and therapy. Med Law. 25 (3): 553-61, Sept. 2006.

105.  Brian A. McCarthy, Alluru S. Reddi, Kathleen M. Coakley, Steven M. Nguyen, Rasha R. Nayal, Mahamad Javdan, Santanu Paul, Norman Ende. Administration of human umbilical cord blood cells produces interleukin-10 (IL-10) in IL-10 deficient mice without immunosuppression. Curr stem Cell Res Ther. 5(1):13-6, March 2010.

106.  Azzam El, Yang Z, Li M, Kim S, Kovalenko Oa, Khorshidi M, Ende N. The effect of human cord blood therapy on the intestinal tract of lethally irradiated mice: possible use for mass casualties. Int J radiat Biol. 86(6): 467-75, June 2010.

107.  Reddi, AS, Kuppasani, K and Ende, N. Human umbilical Cord Blood as an Emerging Stem Therapy for Diabetes. Curr Stem Cell Res & Ther, 5 (4): 357, 2010.

108.  Reddi, AS, Ende, N. the use of human umbilical cord blood for wound healing, burns, and brain injury in combat zones. Military Med, 176, 4:361, 2011.

109.  Ende, N. Coakley KM and Swan KG. Emergency use of human cord blood. In: Pregnancy Specific Biological Substances in Regenerative Medicine. Ed. N. Bhattacharya, Springer-Verlag, UK, 2011.

110.  Ende, N, and Azzam El. Considerations for the treatment of mass casualties based on pathology of the fatalities of Hiroshima and Nagasaki, Int J Radiat Biol. 2011 Apr;87(4):443-4. Epub 2011 Jan 4

111.   Ende N, Kovalenko OA, Azzam EI. The necessity of the early use of antibiotics in treatment of mass casualties from ionizing radiation. Int J Radiat Biol. 2012, 88(4):381. Epub 2011 Dec 20.

112.   Souayah N, Coakley KM, Chen R, Ende N, McArdle JJ. Defective neuromuscular transmission in the SOD1 G93A transgenic mouse improves after administration of human umbilical cord blood cells. Stem Cell Rev. 2012, 8(1):224-8

113.   Webinar Treatment of mass casualties from a nuclear explosion or terrorist attacks. Presented to Regional IND Planning Team, NY, NJ, CT, PA on March 19, 2012, Norman Ende, Professor of Pathology and Laboratory Medicine, Capt. Mc USNR (ret.)

114.   Kovalenko OA, Azzam EI, Ende N. Human umbilical-cord-blood mononucleated cells enhance the survival of lethally irradiated mice: dosage and the window of time. J Radiat Res. 2013 Nov 1;54(6):1010-4. Epub 2013 Jun 21

115.   Letter to Editor, Ende N, New England Journal Med.378; 25 June21,2018

116.   Norman Ende, M.D.  Timing of Cord Clamping: A critical issue for major medical centers, Newsletter Parent's Guide to Cord Blood Foundation, December 13 ,2018

**Abstracts, presentations**

1.   Ende N, Gelpi AP with technical assistance of James Castle. Observations on red cell survival in normal adult males following splenectomy. Clin Res 7:54-55, 1959.

2.   Ende N, Auditore JV: The presence of a fibrinolytic enzyme associated with human and dog mast cells. Clinical Research 9:21 #1, 1961.

3.   Ende N, Auditore JV: Proteolytic enzyme and tissue activator associated with canine and mast cell tumors. Bio Pharm 8:152, #505, 1961.

4.   Ende N: Serum cholesterol in acute starvation. Published in the program of the American Society of Clinical Pathologists & College of American Pathologists, Seattle, Washington. Pg 62, 1961.

5.   Ende N, Auditore JV: Esterase activity of mast cells. Clin. Res, 10:22, 1962.

6.   Ende N, Woods LP, Shelley HS: Carcinoma arising in ducts surrounding the prostatic urethra. Am.J.Clin. Path. 40:419, 1963.

7.   Ende N: Thromboangiitis obliterans and streptokinase. Clin. Res.12:25,  1964.

8.   Katayama Y, Ende N: ATEE- and TAME-esterases of human mast cell. Fed Proc 23: no. 2, part 1, 1964.

9.   Ende N, Auditore JV: A fibrinolytic system in normal dogs and a dog with cell tumor. Feb. Proc. 23: No 2, Part 1, 1964

10.   Ende N, Zukoski CF: Problems in pathology related to renal transplantation with special reference to the use of "old" kidneys. Am J Clin Path 42:519, 1964.

11.   Ende N, Williamson EF: Humoral antibodies and human renal homograft rejection. Am J Path 50:44. 44a-45a 1967.

12.   Ende N, Shelley HS: Carcinoma arising in the periurethral ducts. Am J Clin Path 49:267, 1968.

13.   Ende N, Williamson EF, Lankford PG: Homoral antibodies in recipients of renal homografts. Am J Clin Path 49:243, 1968.

14.   Ende N, Kelly LV, Killen DA: Cytology of death. Am J Path Vol 55, No. 3, 17A and 18 a, June 1969.

15.   Ende N, Kelly LV, Killen DA: Determination of ischemic injury of cadaveric donor kidney by cytologic imprints. Am J Clin Path 52:87-88, 1969.

16.   Ende N, Summers KC: The presence of antigens in lymph nodes not detected when typing peripheral blood lymphocytes. The Am J Path Vo 59, No. 3, 51a and 52a, June 1970.

17.   Ende N: The effect of transplantation on existing pathology in transplanted kidneys. International Congress of Nephrology. Mexico, 1972.

18.   Ende N: The effect of transplantation existing pathology in transplanted kidneys. The American Association of Pathologists and Bacteriologists. Washington, DC, 1973.

19.   Ende N:  Histologic examination of removed transplanted kidneys. Fifth International      Congress of the Transplantation Society, Jerusalem, August, 1974.

20.   Ribot S, Ende N: Relationship of Pre and Post Transplant Cytotoxicity to graft survival. The Fifth International Congress of the Transplantation Society, Jerusalem, August 1974.

21.   Ende N, Orsi EV, Britten TL, Baturay NZ:  Anti-kidney cytotoxic antibodies in human renal allografts, Am J of Path., Boston Mass. Vol 82, No. 2, February 1976.

22.   Orsi EV, Ende N, Britten TL, Howard JL, Baturay NZ, Ribot S, Islami H: Herpes virus infection associated with human renal transplantation. Am Soc of Nephrol 9th Annual Meeting 1976,p123.

23.   Ende N, Orsi EV, Robot S, Islami H, Howard JL, Baturay NZ: Herpes virus hominis type 2 in renal allografts. The American Society of Nephrology 9th Annual Meeting 1976, p 120.

24.   Ende No, Orsi EV, Howard JL, Baturay NZ, Ribot S, Islami H: High incidence of virus isolation and donor tissue. V11th International Congress of Nephrology. June 21, 1978.

25.   Zelikoff J, Ende N: Detection of herpes viruses by Immunofluorescence in routine human renal biopsies. Fed Proc 39:3, 1980.

26.   Grizzanti J, Ende N, Orsi EV, Safirstein B, Reichman LB and Baturay NZ: Cytotoxic lung antibodies in bronchial asthma. Am Rev of Res Dis 121 (4): Part 2, pg 71, April 1980.

27.   Lubansky K, Amoruso R, Ende N, Orsi EV, Reichman LB: Cytotoxic anti-lung antibody in sarcoidosis. Am Rev of Resp Dis 48, 1982.

28.   Ende N, Orsi, EV, Buechel FF, Baturay NZ, Zelikoff JT: Antibodies to synovial cells in  patients undergoing artificial prosthesis implants. Am J Clin Path 83 (2) 267, 1985.

29.   Fernandez MA, Lu S, Ende N, Godyn JJ, Bachl, B: Stem cells from stored human umbilical cord blood produce fewer colonies but enter an unchanged factor-dependent cell cycle. Am J Clin Path 102 (2), 1994.

30.   Lu S, Fernandez MA, Godyn JJ, Ende N: Changes in the proliferative activity of hematopoietic stem/progenitor cells from the stored human umbilical cord blood measured by flow cytometry cell cycle analysis. ASCP/CAP Fall National Meeting, Washington, D.C., Oct 22-28, 1994. Am J Clin Path 102 (4), 1994.

31.   Ricafort L, Lu S, Giuliani D, Ende N: Human cord blood for nuclear accidents. Lab. Inves. 72 (1), 1995.

32.   Lu S, Ende N, Yelcick J, Godyn J. Self-renewal capacity of hematopoietic progenitor cells in stored human umbilical cord blood. Am J Clin Path 103 (4), 1995.

33.     Yelcick J, Lu S, Ende N, Godyn N. Stem cells from blood bank stored human umbilical cord blood retain their proliferative activity. Am J Clin Path 103 (4), 1995.

34.     Lu S, Ende N: Blast cell colonies identified in 21 day old cord blood stored under blood bank conditions (4˚). Am J Clin Path #69. March, 1997.

35.     Czarneski J, Ende N, Smith I and Raveche ES:  The hematopoietic effects of human cord blood     and irradiation in MRL-lpr/lpr mice. Acta Haematologica, 10th Symposium on Molecular Bio. Of Hematopoiesis and Treatment of Leukemias and Lymphomas 98.  Supplement 1 (122),     1997.

36.     Ende N, Chen R, Weinstein F, Bagtas-Ricafort L, Ende M: Human umbilical cord blood (HUCB) and effect on sod mice (amyotrophic lateral sclerosis) Modern Pathology, Vol. 13, 2000.

37.     Ende N, Chen R. The effect of a megadose of human umbilical cord blood mononuclear cells on Huntington disease mice. Am. J Clin Path 114 (4), 2000.

38.     Ende N, Chen R, Ende-Harris D. Human umbilical cord blood cells ameliorate Alzheimer's disease in transgenic mice. J. Medicine Vol. 32, 2001.

39.     Ende N, Chen R. Effect of human umbilical cord blood on mice with Parkinson's disease. Am Jr. of Clin. Path. Vol 36:629, 2002.

40.     Ende N, Chen R. Human umbilical cord blood mononuclear cells and mice with type I diabetes. Am. Jr. of Clin Path. #37:629, 2002.

41.     Ende, N., Chen R., Reddi A.S.  Transplantation of     Umbilical Cord Blood Mononuclear Cells on  Mouse Animal Model B6.V-Lepob Type 2 Diabetes. Am J Cln Patho, 2004; 112:625-661.

42.     McArdle JJ., Coakley, K., Hognason, K., Chen, R., and Ende, N. "The SOD1 Transgenic Mouse as a Model for Exploring the Therapeutic Action of Human Umbilical Cord Blood". Presented. Society for Neuroscience, 2004, Washington, D.C.

43.     Benn S.C., Kalkanis S.N., Ende N., Brown R.H. Human Umbilical cord blood cells (HUCB) Modestly Delay Onset and Death in Transgenic SOD1G93A Amytrophic Lateral Sclerosis Mice Program No.  341.2 2004 *Abstract Viewer/Itinerary/Planner. W*ashington, DC: Society for Neuroscience, 2004, Online.

44.     Benn, S.C., Kalkanis S.N., Ende E., Brown  Jr., R.H. p68 Human Umbilical Cord Blood Cells     HUCB) Modestly in Transgenic SOD1 Amytrophic Lateral Sclerosis Mice. ALS and other motor neuron disorders, 2004 (5(Suppl 2), 79-99.

45.     Ende N., and Chen R. "Umbilical cord blood mononuclear cells effect prostate cancer in TRAMP mice" Am J Cln Patho; 112:625-661, 2004

46.     Ende, N., Portuando, N., Iffy, L. The Time of Clamping of the Umbilical Cord; Medical, Ethical and Legal Issues. International Conference on Science Law Ethics, Unniv. of Haifa, Israel, May 29, 2005, p. 35.

47.     Ende, N. Scientific American. "The Future of Stem Cells" article (special) report with the Financial Times, July 2005), Nov. 2005 (Letter).

48.     K.M. Coakley, K. Hognason, R. Chen, N. Ende and J.J. McArdle. Human Umbilical Cord Blood Effects on Motor Nerve Function in the SOD1 Transgenic Mouse, Departments of Pharmacology & Physiology and Department of Pathology & Lab Research, New Jersey Medical School, UMDNJ, NJ. Symposium: Neuroprotection and Neurorepair – From Pharmacology to Stem Cells, May 14, 2007

49.  Ende, N. Journal of Translational Medicine. "Our findings conclude that immune suppression is not
     needed for a successful transplant of cord blood . http.//www.translational-
     medicine.com/content/5/1/8/comments May 2, 2007 (Letters)

50.  Ende, N. Examine the Effects of Immediate Cord Blood Clamping. British Medical
     Journal, June 20, 2007.  http://www.bmj.com/cgi/eletters/333/7575/954#169148

51.  McCarthy BA, Souayah N, Coakley KM, Nguyen SM, Nayal RR, Javdan M, Santanu P,
     Metz C, Ende N Human Umbilical Cord Blood Mononuclear Cells Produces Human IL-10 in Mice without
     Immunosuppression Use. Neurology. Volume: 70  Issue: 11  Pages: A338-A338.  2008.

52.  Ende N, Swan K. Novel approach to treat mass casualties from a nuclear explosion. Presented by
     Kovalenko O. Power Point presentation at the Military Health Management Conference, January 2009,
     Arlington, VA.

53.  Kovalenko OA, Azzam EI, Yang Z, Li M, Khorshidi M and Ende N.
     Human cord blood and antibiotic effect on the intestinal tract and survival of lethally irradiated mice:
     possible use for mass casualties. Poster and oral presentation at 56th Annual Radiation Research Society
     Meeting, Savannah, GA, October 3-7, 2009.

54.  Kovalenko OA, Azzam EI, Ende N. Human Umbilical Cord Blood Mononucleated Cells Enhance the
     Survival of Lethally Irradiated Mice: Dosage and the Window of Time. Poster presentation at 59th Annual
     Radiation Research Society Meeting, New Orleans, LA, September 14-19, 2013

55.  Ende, N Comment on Restoring Systemic GDF11 Levels Reverses Age-Related Dysfunction in Mouse
     Skeletal Muscle, Science, June 2014 http://comments.sciencemag.org/content/10.1126/science.1251152

56.  Ende, N Treatment of Mass Casualties from a Nuclear Explosion or a Terrorist Attack Based on Findings
     of Hiroshima and Nagasaki. Presented to Dr. Lacy, Director of Institute for Emergency Preparedness and
     Homeland Security. July 24, 2014

57.  Ende, N Comment on Vascular and Neurogenic Rejuvenation of the Aging Mouse Brain by Young
     Systemic Factors, Science, August 2014 http://comments.sciencemag.org/content/10.1126/science.1251141


**Book Chapters & Books**

1.   Ende N: Use of human umbilical cord blood for stem cell transplantation. (HLA-matched, unmatched;
     clinical, ethical and legal aspects). In: Levitt D, Mertelsmann R: Hematopoietic Stem Cells- Biology and
     Therapeutic Applications. NY,: Marcel Dekker, Inc., 1995, pgs. 333- 347.

2.   Ende N, Coakley KM and Swan KG. Emergency use of human cord blood. In: Pregnancy Specific
     Biological Substances in Regenerative Medicine. Ed. N. Bhattacharya, Springer-Verlag, UK, 2011.

3.   Ende, N. An Emergency Plan that could Save Thousands: Based on Experiences of Hiroshima and
     Nagasaki. Published on Amazon.com. Japanese edition 2012

4.   Ende, N. An Emergency Plan that could Save Thousands: Based on Experiences of Hiroshima and
     Nagasaki. 2nd edition: New Medical Planning Manual. Published on Amazon.com, 2013

5.   Japanese Version (Electronic Amazon) 2012.

6.   Chinese version & South Korean Version 1st edition 2017

7.      Ende, N: An Emergency Plan that could Save Thousands: Based on Experiences of Hiroshima and Nagasaki. 3rd edition: Medical Planning <u>FDA Scandal and Soft Targets</u>. July 2017

Rev.6/28/2017

# EXHIBIT "B"

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS UNITED STATES AIR FORCE
WASHINGTON DC

12 February 2020

HQ USAF/SG
1780 Air Force Pentagon
Washington, DC 20330-1780

Nemaat Ender, M.D.
Professor of Pathology and Laboratory Medicine
UMDNJ-New Jersey Medical School
185 So. Orange Avenue, MSB C-565
Newark, New Jersey 07103-2709

Dear Dr. Ender:

Thank you for your letter and your ongoing efforts supporting our Nation's defense, particularly for your thoughtful concern of how best to respond to mass casualties following a nuclear event. Most certainly, this type of event will require a cooperative and integrated response by both military and civilian medical agencies. Our Air Force is currently working with a wide array of emergency partners in all-hazards response planning. Like our civilian counterparts, the Air Force acts as part of the National Disaster Medical System (NDMS) for patient movement. Under this NDMS, casualty evacuations would be federally coordinated under the leadership of the Department of Health and Human Services (DHHS), Assistant Secretary for Preparedness and Response.

Again, I thank you for your continued commitment to these pressing challenges our Nation faces. I am certain the DHHS would also well welcome your insights and contributions in the area of mass casualty management. Please let me know if my office can be any further assistance. My point of contact for this matter is Lt Col Ron Marchion, (703) 588-7133 or ronald.marchion@pentagon.af.mil.

Sincerely,

CHARLES B. GREEN, USAF, MC CFS
Lieutenant General, USAF, MC CFS
Surgeon General

2

# EXHIBIT "C"



# RUTGERS
New Jersey Medical School

Office of the Dean
Medical Science Building, Room C-671
Rutgers, The State University of New Jersey
185 South Orange Avenue
Newark, NJ 07103

njms.rutgers.edu

phone: 973-972-4538
fax: 973-972-7104

January 14, 2020

Norman Ende, MD
Professor
Department of Pathology, Immunology & Laboratory Medicine
Rutgers New Jersey Medical School

***Sent via email to endeno@njms.rutgers.edu and via UPS Overnight to:***
***91 East Shore Road***
***Mountain Lakes, New Jersey 07046***

Dear Dr. Ende:

Based on recent interactions and incidents, specifically your collapse in the Medical School Building on the morning of Monday January 6, 2020, I am requiring you to undergo a Fitness for Duty Evaluation prior to returning to work. An appointment has been made with an independent practitioner who will perform this evaluation. Please report to the following location on Friday, January 24, 2020 at 8:30 a.m.

> The Institute for Forensic Psychology
> 2 Fir Court, Suite 2
> Oakland, New Jersey 07436
> Tel: (201) 337-4996

You are not permitted to report to work until this evaluation is complete and you are cleared to return to duties by my office.

Sincerely,

Robert L. Johnson, MD, FAAP
The Sharon and Joseph L. Muscarelle Endowed Dean
Rutgers New Jersey Medical School

# EXHIBIT "D"

MRS-L-000327-20   02/07/2020 10:48:06 AM  Pg 25 of 32 Trans ID: LCV2020263388
Case 2:20-cv-01406-KSH-CLW   Document 1   Filed 02/11/20   Page 45 of 60 PageID: 45

# Randolph
## Medical & Renal Associates, P.A.
### 121 CENTER GROVE ROAD   □   RANDOLPH, NJ 07869   □   973/361-3737

STEVEN M. GUDIS, M.D.
SHING LI, M.D.
LAUREN PASTER, M.D.

January 17, 2020

Robert L. Johnson, MD, FAAP
Rutgers New Jersey Medical School
Office of the Dean
Medical Science Building, Room C-671
185 South Orange Avenue
Newark, NJ  07103

Re: Norman Ende, MD

Dear Dr. Johnson:

I have been Dr. Norman Ende's primary care Physician for many years.  I am aware of the events that occurred when he "collapsed" at work and have examined him since.

His "collapse" was caused by orthostatic hypotension due to dehydration while on several cardiac medications.  The doses of those medications have been reduced and he is again feeling much improved and ready to return to his part time position.

I believe it should be up to his personal Physicians and not some new Physician that you have selected and who doesn't know him, to determine when and if he can return to work.  To put such restrictions on a Physician colleague who admirably wants to continue working is in my opinion entirely wrong.

Sincerely,

Steven Gudis, MD

# EXHIBIT "E"

 **Cardiology Consultants of North Morris, P.A.**

356 Route 46, Mountain Lakes, NJ 07046
973/586-3400 Fax 973/586-1916
www.morriscardiology.com

Diplomates-Cardiovascular Disease/American Board of Internal Medicine

Robert L. Wang, M.D., F.A.C.C.     Stuart E. Shulruff, M.D., F.A.C.C.
Ronald D. Massari, M.D., Ph.D., F.A.C.C.     Guillermo A. Cook, M.D., F.A.C.C.
Benjamin Fusman, M.D., F.A.C.C.     Jordan G. Safirstein, M.D., F.A.C.C.
Mehmood R. Ahmad, M.D., F.A.C.C., F.A.C.P.

January 20, 2020

Robert Johnson, MD, FAAP
Rutgers New Jersey Medical School
Office of the Dean
Medical Science Building; Room C-671
185 South Orange Avenue
Newark, NJ 07103

Re: Norman Ende, MD

Dear Dr Johnson:

I have been Dr Norman Ende's cardiologist for many years. I follow him for his long history of coronary artery disease and heart failure.

I am aware of the events that occurred recently when Dr Ende collapsed on his way in to work. Dr Ende called here to report the incident and he was seen and examined by me the next day.

It appears as though his collapse may have been caused by orthostatic hypotension while on several cardiac medications. The doses of his medications have been reduced and he reports that he is feeling much improved and he wishes to return to his part time position.

If you have any questions, please do not hesitate to contact our office.

Sincerely,

Robert Wang, M.D., F.A.C.C.
RLW/mh

# EXHIBIT "F"

# RUTGERS
New Jersey Medical School

Office of the Dean
Medical Science Building, Room C-671
Rutgers, The State University of New Jersey
185 South Orange Avenue
Newark, NJ 07103

njms.rutgers.edu

phone: 973-972-4538
fax: 973-972-7104

February 4, 2020

Norman Ende, MD
Professor
Department of Pathology, Immunology & Laboratory Medicine
Rutgers New Jersey Medical School

Dear Dr. Ende:

This is a follow-up to my letter to you on January 9, 2020.  In that letter, I instructed you to report for a fitness for duty evaluation on January 24, 2020.  You failed to do so.  I, therefore, am writing to reiterate that you are required to report for a fitness for duty evaluation and be cleared to return to work before you may return.

As set forth in my January 9, 2020 letter, you are being referred for a fitness for duty evaluation because recent events have caused concerns about your ability to perform your essential job functions.  These include, but are not limited to, a number of occasions on which others have observed you unfocused in meetings, repeating yourself during meetings or in conversation, and/or unable to follow threads of conversation.

As also was set forth in my previous letter, the most recent incident that caused the University to question your fitness occurred on Monday, January 6, 2020, when you collapsed in the building and were taken to the emergency room via ambulance. There have, however, also been other recent incidents that have caused concern regarding your ability to perform your essential job functions.  For example, housekeeping has reported several incidents when you were unable to appropriately utilize the lavatory, leaving it significantly soiled, and resulting in hazardous conditions.  By way of further example, in a separate incident to the one mentioned above, you sustained a fall in the lavatory in July of 2019.

A new appointment has been made with an independent practitioner who will perform your fitness for duty evaluation.  You must report to the following location on **Tuesday, February 11, 2020, at 8:30 am.**

The Institute for Forensic Psychology
2 Fir Court, Suite 2
Oakland, New Jersey  07436
Tel: (201) 337-4996

As stated above, you are not permitted to report to work until this evaluation is complete and you are cleared to return to work.  Failure to report for this evaluation may result in disciplinary action, up to and including, termination.

Sincerely,

Robert L. Johnson, MD, FAAP
The Sharon and Joseph L. Muscarelle Endowed Dean
Rutgers New Jersey Medical School

# EXHIBIT "G"

# CASHA & CASHA, LLC

LAWRENCE A. CASHA *
DEBRA E. CASHA

\* Member NJ & NY Bars
†Member NJ, MD, & DC Bars
⁴Member NJ, NY, & VA Bars

Attorneys at Law
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Fax Numbers:
Real Estate (973) 263-9225
General (973) 263-1830

GEOFFREY C. EVANS
CRISTYN D. CLIFTON⁴
ANN BOWEN SCHISSLER⁴
DONALD S. DINSMORE

Retired
LESLIE E. SILVER

February 4, 2020

**VIA CERTIFIED MAIL R.R.R 7019 1120 0001 5577 6222 and**
**EMAIL fgoldhenry@ogc.rutgers.edu**
Farrah Gold Henry, Esq.
Senior Associate General Counsel
Liberty Plaza
335 George Street, Suite 2160
New Brunswick, New Jersey 08901

> RE:   **Ende vs. Rutgers University (Dean Robert L. Johnson, Rutgers NJ Medical**
> **School)**
> **Docket No.: TBD**
> **Our File: 20019**

Dear Ms. Henry:

We are in receipt of your letter of February 4, 2020. In such letter, you outlined concerns and incidents regarding Dr. Ende. Kindly forward to our offices any documentation in Mr. Ende's personnel file corroborating the concerns and incidents set forth.

I believe that these documents could help resolve this matter. Kindly reply to me by email with these documents by the close of business February 6, 2020. I intend otherwise to file an Order to Show Cause on February 7, 2020.

I remain,

> Very truly yours,
> CASHA & CASHA, LLC
>
> Donald S. Dinsmore, Esq.

DSD:css

cc:   Dr. Norman Ende (via regular mail)

W:\Ende - N\20019\ltr.Farrah Gold Henry.2.4.20.docx

# CASHA & CASHA, LLC

LAWRENCE A. CASHA *
DEBRA E. CASHA

\* Member NJ & NY Bars
⁺Member NJ, MD, & DC Bars
#Member NJ, NY, & VA Bars

Attorneys at Law
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Fax Numbers:
Real Estate (973) 263-9225
General (973) 263-1830

GEOFFREY C. EVANS
CRISTYN D. CLIFTON⁺
ANN BOWEN SCHISSLER#
DONALD S. DINSMORE

Retired
LESLIE E. SILVER

February 7, 2020

**Via E-filing only**

Honorable Robert J. Brennan, J.S.C.
Morris County Courthouse
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910

> **RE:   Ende vs. Rutgers University (Rutgers New Jersey Medical School)**
> **Docket No.: TBD**
> **Our File: 20019**
> **JACS: 146294**

Dear Judge Brennan:

This office represents the Plaintiff Dr. Norman Ende in the above captioned matter.  Please accept this letter memorandum of law in leu of a more formal brief in support of Plaintiff's Order to Show Cause to grant Plaintiff temporary injunctive relief as well as preliminary injunctive relief.

## STATEMENT OF FACTS

Plaintiff relies on all statements made in his certification dated February 5, 2020 submitted herewith.

## LEGAL ARGUMENT

In the event that injunctive relief is not granted, Plaintiff will suffer irreparable harm which is not capable of being fully remedied by an award of money damages.  The Supreme Court established in <u>Crowe v. DeGioia</u>, 90 N.J. 126, 132-135 (1982) four requirements for such relief:

    (1) Preliminary injunction should not issue except when necessary to prevent irreparable harm.

    (2) Temporary relief should be withheld when right <u>client's</u> claim is unsettled.

    (3) A preliminary injunction should not issue where all material facts are controverted.

    (4) The final test is in considering the granting of a preliminary injunction is the effective hardship to the parties in granting for denying release.

The first, second, and fourth requirements require legal analysis.

## POINT 1

### In accordance with Crowe v. DeGioia, Dr. Ende has suffered irreparable harm.

In the matter at hand there is reputable harm.  Crowe v. DeGioia presents us with a standard for establishing reputable harm.  The injury done must not be regularly addressed by monetary damages. <u>Citizens Coach Company v. Camden Horse.</u> R.R., 29 N.J. Eq. 299,303 (E&A 1878) harm is generally considered irreparable in equity if cannot be addressed adequately by monetary damages.  In certain circumstances, severe personal inconvenience can constitute irreparable injury issuance of injunctive relief. <u>Hodge v. Giese</u> 43 N.J. Eq 342, (Ch. 1 1887).  Pecuniary damages

may be inadequate because of a nature of an injury or rights affected.  In Crowe's case, Crowe who was seeking a divorce was threatened with the loss of her home of 14 years and her only means of support.  Eviction and as well as reduction to poverty were ruled damages that could not compensated adequately by monetary damages awarded by a distant plenary hearing.

The case at hand is analogous to Crowe.  Dr. Ende has a vested interest in his research into umbilical cord blood transfusion.  As an individual, this is his life-long work spanning decades. To continue this work would strip him personally of his ability to contribute to society.  There is further reputable harm to the public.  Dr. Ende's research could significantly further the health of many new born children, and increase the overall safety of the United States in the event of a terrorist attack.  These benefits not only to Mr. Ende but society in general cannot be compensated by monetary damages.  Therefore, Dr. Ende meets the first requirement of Crowe.

## POINT II

### In accordance with Crowe v. DeGioia the law in the underlying matter is settled.

Dr. Ende's claim can succeed on its merits.  The Appellate Court of the State of New Jersey recently set forth standards for establishing a basis for a fitness of duty evaluation, In The Matter of Paul Williams, Township of Lakewood, 443 N.J. Super 532.  In Williams, the complaining employee, Paul Williams, contested a request for a fitness of duty evaluation that was requested due to his temperament.  Mr. Williams contested the examinations stating that were not "**job related and consistent with business and necessity** under 42 U.S.C.A. 12112(d)(4)(A) and

therefore, the Township could not demand that he undergo them. (bolding added for emphasis) "Therefore, if the Appellant did not attend the evaluation. The Township took further disciplinary matters against Mr. Williams.

The Court in <u>Williams</u> found that after carefully reviewing 42 U.S.C.A. 12112(d)(4)(A) and the EEOC's regulations and its guidance, and distilling them to the essence it concluded that an employer may only require an employee to undergo a psychological fitness for duty examination when the employer has a reasonable belief, either through direct observation or through reliable information from credible sources that the employee's perceived mental state will either affect his ability to perform his essential job functions or that the employee poses a direct threat. As the EEOC has observed the employers. Id at 538.

The Court went further on to state, "Applying these principals to the facts in this case we hold that the Township violated 42 U.S.C.A. 12112(d)(4)(A) when ordering the appellant to participate in a psychological fitness of duty evaluation based on the information contained in an anonymous letter simply stated that the Township did not meet its burden of demonstrating that its directive was "job related and consistent with the business necessity". **Id at 538**.

The current matter closely reflects the circumstances laid out in Lakewood. The letter in question specifically cites a fall suffered by Dr. Ende. This was a physical issue, not a psychological one that is completely independent of the essential job functions of the University professor. Rutgers University policy 60.5.1 regarding professors' states, "that the primary responsibility to their subject is to seek and to state the truth as they see it. To this end professors devote their energies

to developing and improving their scholarly competence." This policy only cites the intellectual and communication function. The letter provides no evidence that Dr. Ende was unable to deliver these intellectual and communication functions. The job function that was cited was completely irrelevant, considering it is only a physical one. This is a physical condition which is curable by a change in medication according to Dr. Ende's own attending Physician and Cardiologist.

Like the situation in Lakewood where the Township relied on an anonymous letter, the letter sent from Rutgers University to Dr. Ende on January 14, 2020 is insufficient to support a mandatory evaluation. Besides the fall which is addressed above, the letter cites "interactions and incidents". The University provides no detail as to what is an interaction and incident. Nothing is attached to the letter detailing said interactions and incidents. The claim is completely arbitrary and capricious, like the anonymous letter in Lakewood. The February 4, 2020 letter is unsupported by personal file records, and therefore should not be considered.

The actions of Rutgers University are tantamount to a firing, the only logical disciplinary progression is to remove Dr. Ende fully from his job. From Dr. Ende's perspective he is no longer able to perform his life work and not performing those responsibilities is tad about to a firing to him. The State of New Jersey uses a burden shifting process to establish a violation of the New Jersey law against discrimination based on the tests set forth in McDonnell Douglas Corp. v. Green 411 U.S. 792, (1973). In reaction to a racial discrimination case the court created a test to establish discrimination. This test has been applied to age discrimination matters such as Sive v. Stanley Roberts 182 N.J. 436 (2015). The framework laid out in McDonnell Douglas is as follows: (1.) The Plaintiff must be a member of protected class; (2.) The Plaintiff was fired from a position from

which he or she was qualified; (3.) The Plaintiff was subject to an adverse employment situation; (4.) Disparity in age between the person hired and Plaintiff is sufficient to suggest age discrimination or termination occurred under circumstances sufficient to give rise to an inference of illegal discrimination. In New Jersey the evidentiary burden at the prima facia stage of employment discrimination is rather modest. It is to demonstrate to the Court that the Plaintiff's factual scenario is compatible with discriminatory intent- i.e., that discrimination could be a reason for the employer's action Sive v. Stanley Roberts 182 N.J. 436, 443 (2015).

First, the current scenario Dr. Norman Ende at age 95 is clearly a senior citizen and thus is in a protected class due to his age. Second, due to the fact that Dr. Ende has worked for UMDNJ now the New Jersey School of Medicine since 1971 he is clearly in a position he was qualified to perform. Third, the clearly illegal request that Dr. Ende submit to a fitness of duty evaluation to return to his work is clearly an adverse employment decision. Fourth and finally, in the inevitable situation where Dr. Ende refuses to submit to such an inappropriate fitness of duty evaluation he without doubt will be fired, and likely will be replaced by someone significantly younger than he is in his position.

## POINT III

The final test in considering the granting of a preliminary injunction is the relative hardship to the parties in granting or denying relief. *Isolantite Inc. v. United Elect. Radio & Mach. Workers,* 130 *N.J.Eq.* 506, 515, 22 A.2d 796 (Ch. 1941), mod. on other grounds, 132 N.J.Eq. 613, 29A.2d 183 (E. & A. 1942). De Gioia, apparently now a person of substantial means, would suffer relatively

inconsequential expense if relief is granted.  By contrast, withholding support from Crowe would

be devastating.  On balance, the equities favor the grant of temporary relief to maintain the *status*

*quo* pending the outcome of a final hearing.  In the current case, Rutgers University would not be

substantially burdened by allowing Dr. Ende to continue, he has worked for them for decades.  As

described above, Dr. Ende's life work and possible contribution to society would be substantially

impacted by barring him from returning to work due to the unreasonable requirement of an illegal

fitness of duty evaluation.


## CONCLUSION


For the foregoing reasons and legal authorities cited it is respectfully submitted that the Plaintiff's

Order to Show Cause for injective relief and temporary restraints be granted.  An Order should be

signed granting the temporary restraints, and subsequent to a plenary hearing an injunction should

be granted.


Respectfully submitted,

CASHA & CASHA, LLC

Donald S. Dinsmore, Esq.


DSD:mv
Enclosures

cc:    Dr. Norman Ende (via regular mail)
       Farrah Gold Henry (via regular mail)
       John J. Hoffman (via regular mail)

# CASHA & CASHA, LLC

LAWRENCE A. CASHA *
DEBRA E. CASHA

\* Member NJ & NY Bars
⁺Member NJ, MD, & DC Bars
#Member NJ, NY, & VA Bars

**Attorneys at Law**
115 Horseneck Road, Suite 2
Montville, New Jersey 07045
(973) 263-1114
Fax Numbers:
Real Estate (973) 263-9225
General (973) 263-1830

GEOFFREY C. EVANS
CRISTYN D. CLIFTON⁺
ANN BOWEN SCHISSLER#
DONALD S. DINSMORE

Retired
LESLIE E. SILVER

February 7, 2020

**<u>Via E-filing only</u>**

Honorable Robert J. Brennan, J.S.C.
Morris County Courthouse
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910

> **RE:**   **Ende vs. Rutgers University (Rutgers New Jersey Medical School)**
> **Docket No.: TBD**
> **Our File: 20019**
> **JACS: 146294**

Dear Judge Brennan:

This office represents the Plaintiff Dr. Norman Ende in the above captioned matter.  Enclosed please find a Verified Complaint, Order to Show Cause with Restraints, Final Order, Certification of Support for the Order to Show Cause and Temporary Restraining Order and a letter brief memorandum.  Also note that our JACS account number is listed above.  Kindly ensure that this account is debited for the filing fee.

Respectfully submitted,
CASHA & CASHA, LLC

Donald S. Dinsmore, Esq.

DSD:mv
Enclosures

cc:   Farrah Gold Henry (via Certified Mail R.R.R.:7019 1120 0001 5577 6253 and email:
**fgoldhenry@ogc.rutgers.edu**)
John J. Hoffman (via regular mail)

W:\Ende - N\20019\ltr.Honorable Robert J. Brennan, J.S.C..2.04.20 cover letter.docx